UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JANA MCGLINCHEY                                                                                        PLAINTIFF

v.                                                                         CIVIL NO. 3:24-CV-403-DPJ-ASH

CIOX HEALTH, LLC                                                                                      DEFENDANT

ORDER

Jana McGlinchey alleges her former employer CIOX Health, LLC, violated the Family Medical Leave Act and the Americans with Disabilities Act. Am. Compl. [8]. The Court will deny CIOX's motion to dismiss [19].

I.      Background

In May 2020, McGlinchey began working for CIOX in an audit-specialist position that allowed her to work remotely from her home in Madison County, Mississippi. *Id.* ¶¶ 7, 11. After her first manager was replaced in January 2023 by Jackie Josing, problems began. Josing arbitrarily changed McGlinchey's hours and gave her a negative performance evaluation. Even after CIOX retracted that review and replaced it with a positive one, it declined to reassign McGlinchey to a new supervisor, upon which she quit. *See generally id.* ¶¶ 23–52.

McGlinchey filed an EEOC charge the next month, alleging discrimination on the basis of her disability in violation of the ADA. *Id.* ¶ 53; EEOC Charge [1-1]. After receiving her right-to-sue notice on May 30, 2024, McGlinchey sued within the 90-day limitations period. Am. Compl. [8] ¶ 5.

CIOX moved to dismiss [6], and McGlinchey filed on the same day both her response [9] and her Amended Complaint [8], which adds no new parties or claims but provides a few extra facts. CIOX first replied [13] in support of its motion, then moved [19] to dismiss the Amended

Complaint.  McGlinchey responded [23], but CIOX did not reply, and its time for doing so under the Local Rules has passed.  Seeing that the parties were proceeding on the basis of the Amended Complaint, the Court entered an order finding the first motion to dismiss [6] moot.  Text Order (Nov. 20, 2024).

II.     Standard

In considering a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

III.  Discussion

    A.  ADA Claim

McGlinchey argues that CIOX "manipulated her performance evaluations, imposed discriminatory work conditions, and failed to accommodate her disabilities, all of which materially impacted the terms and conditions of her employment."  Pl.'s Mem. [24] at 8.

"Under § 12112(a) of the ADA, an employer is generally prohibited from 'discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"  *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (quoting 42 U.S.C. § 12112(a)).

To plead a prima facie claim of ADA discrimination, a plaintiff must provide facts to support "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)).  The parties dispute whether McGlinchey pleaded an adverse employment action; she says she did, namely constructive discharge.  Pl.'s Mem. [24] at 8.

For a constructive-discharge claim, a plaintiff must allege her working conditions were "so intolerable that a reasonable person would have felt compelled to resign."  *Mandujano v. City of Pharr*, 786 F. App'x 434, 437 (5th Cir. 2019) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)).  "Whether an employee would feel forced to resign is case- and fact-specific[.]"  *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)).  The standard is "an objective, 'reasonable

3

employee' test: whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.*

While the analysis of whether an employee would feel forced to resign is case-specific, the factors below are often relevant, singly or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement

*Keelan,* 407 F.3d at 342 (quoting *Haley v. All. Compressor LLC*, 391 F.3d 644, 649–50 (5th Cir. 2004)). But that list of factors is non-exclusive. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

Here are the facts McGlinchey pleads to support her claim:

- McGlinchey missed five days of work in April and May 2023 for health reasons, which Josing counted against her in giving her a negative performance evaluation in August 2023. Am. Compl. [8] ¶¶ 12–22. Josing also found it inappropriate that McGlinchey's husband, not McGlinchey, told CIOX about the May hospitalization; when McGlinchey said that was impossible since she was hospitalized without a phone, Josing said, "I don't make the rules." *Id.* ¶¶ 24–26.

- McGlinchey had shared with Josing she "suffered from significant psychiatric symptoms of depression and anxiety," but neither Josing nor anyone else "ever offered or encouraged [her] to consider using FMLA leave," which McGlinchey says she would have done, had she "been notified of her rights under the FMLA." *Id.* ¶¶ 15–16.

- McGlinchey protested the evaluation as well as Josing's new rule that McGlinchey had to work from 5:30 a.m. to 3:30 p.m., which Josing attributed to the wishes of McGlinchey's principal client. *Id*. ¶¶ 23–28. But when McGlinchey checked with the client, she learned it had made no such request. *Id*. ¶¶ 29–30.

- The aggrieved McGlinchey told Josing she would go to the human-resources office about the evaluation, to which Josing retorted, "Don't threaten me." *Id*. ¶¶ 33–34.

- The HR office gave McGlinchey a positive response about the poor evaluation, finding Josing did it incorrectly and "reprimand[ing] Ms. Josing for the attitude, tone, and demeanor that she exhibited" towards McGlinchey. *Id*. ¶¶ 28–40. The redone evaluation score jumped from 77 out of 100 to 99.7. *Id*. ¶¶ 18, 41–42.

- Yet Josing "continued to imply" that McGlinchey's performance was, regardless, unsatisfactory and also kept insisting on the new schedule. *Id*. ¶¶ 43–45.

- Then McGlinchey returned to HR to object that the client hadn't requested the changed schedule and "was very happy with her" and her work. *Id*. ¶ 47. She asked to keep the same flexible schedule as always, and she requested reassignment to a more agreeable manager. *Id*. But CIOX replied that she could either work the new schedule or be reassigned to a new client and that Josing was the only available manager—which McGlinchey believes untrue, since another auditor was assigned away from Josing to a new manager shortly after McGlinchey's request. *Id*. ¶¶ 48–51.

CIOX acknowledges some of this in its motion but argues that "[a]t the time of her resignation, the only issue for Plaintiff was that Ms. Josing was still her supervisor." Def.'s

5

Mem. [20] at 5. That fails to account for McGlinchey's allegations that she requested a return to the flexible schedule she had been on since day one at CIOX, that her main client denied wanting to change and was happy with her, and that Josing mistreated her. McGlinchey highlighted these and the other well-pleaded facts in her response to CIOX's motion; CIOX declined to reply.

These alleged facts may prove to be a bit thin. *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991–92 (5th Cir. 2008) (affirming summary judgment on no constructive discharge although supervisor "exhibited anger, violence, shouting, and waved his arms" at plaintiff); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 440 (5th Cir.2005) (likewise affirming summary judgment despite plaintiff's being "treated rudely and with general hatefulness" by supervisors, one of whom "state[d] that he would receive a bonus if he ran her off"). But those cases were decided on summary judgment. And the Fifth Circuit has held that "badgering, harassment, or humiliation calculated to encourage the employee to resign" can support a claim for constructive discharge. *Keelan*, 407 F.3d at 342; *see Clark v. Auger Servs., Inc.*, 443 F. Supp. 3d 685, 710 (M.D. La. 2020) (denying motion to dismiss constructive-discharge claim "[f]or purposes of this stage of the litigation" despite "vague and sparse" allegations).

The Court thus cannot say that McGlinchey has failed to allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of" a constructive discharge. *In re S. Scrap Material Co., LLC*, 541 F.3d at 587 (5th Cir. 2008). For these reasons, the Court denies the motion to dismiss McGlinchey's ADA claims.

B.     FMLA Claim

McGlinchey's specific claim under the FMLA is for interference with exercising her rights under that Act. She "has suffered and continues to suffer significant lost pay and benefits." Am. Compl. [8] ¶ 160. She also demands liquidated damages and "all other relief, at law or in equity," she's entitled to. *Id*. ¶¶ 161–62.

In its motion, CIOX argues two points. First, it denies that it was required to give her any notice of her FMLA rights. Def.'s Mem. [20] at 7.

> When an employer "acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). Failure to give the required notice "may constitute" interference. *Id.* § 825.300(e).

*Park v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 294 (5th Cir. 2020).

In her Amended Complaint, McGlinchey pleads that she told Josing about her problems with depression and anxiety the month before McGlinchey was hospitalized for those issues. Am. Compl. [8] ¶ 15. She argues in response to the motion that "[t]his hospitalization clearly qualifies as a 'serious health condition' under the FMLA because it involved inpatient care and ongoing treatment by a healthcare provider." Pl.'s Mem. [24] at 14 (citing 29 U.S.C. § 2611(11); 29 C.F.R. § 825.113(a)). And she alleges she had informed CIOX why she was absent, i.e. that it was because of her depression, which required inpatient treatment. Am. Compl. [8] ¶ 23. This is arguably not the same as "she took a few days off." Def.'s Mem. [20] at 8.

Making all reasonable inferences in McGlinchey's favor, the Court finds she sufficiently pleads that CIOX was aware her May 2023 absences potentially qualified for FMLA leave. If

7

true, CIOX was obliged to notify her of her eligibility for FMLA leave within five business days. 29 C.F.R. § 825.300(b)(1); *Park*, 832 F. App'x at 294.  CIOX's argument fails.

Second, CIOX says even when an employer technically violates the FMLA, the Act "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  McGlinchey argues that the failure to grant FMLA leave led to her negative evaluation and attendant mental injury which she counts as prejudice.  Pl.'s Mem. [24] at 17.  And, as noted, she has successfully pleaded constructive discharge.  There may be other potential issues with this claim, but for now it has been sufficiently stated.

IV.     Conclusion

The Court has considered all arguments presented.  Any not specifically addressed here would not affect the outcome.  CIOX's motion to dismiss [19] is denied.

**SO ORDERED AND ADJUDGED** this the 20th day of May, 2025.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE